Evan J. Smith
BRODSKY SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH OSBORNE,<br><br>                    Plaintiff,<br><br>          vs.<br><br>HILL-ROM HOLDINGS, INC., JOHN P. GROETELAARS, WILLIAM G. DEMPSEY, GARY L. ELLIS, MARY GARRETT, FELICIA F. NORWOOD, JAMES R. GIERTZ, WILLIAM H. KUCHEMAN, RONALD A. MALONE, GREGORY J. MOORE, NANCY M. SCHLICHTING, and STACY ENXING SENG,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Elizabeth Osborne ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Hill-Rom Holdings, Inc. ("Hillrom" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

Defendants' efforts to sell the Company to Baxter International Inc., through merger vehicle Bel Air Subsidiary, Inc. ("Merger Sub" and collectively with Parent, "Baxter") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a September 2, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Baxter will acquire all the outstanding shares of Hillrom common stock for $156.00 per share in cash. As a result, Hillrom will become an indirect wholly-owned subsidiary of Baxter.

3.      Thereafter, on October 1, 2021, Hillrom filed a Preliminary Proxy Statement on Form PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on October 1, 2021 with the SEC in an effort to secure Plaintiff's vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or

misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Hillrom, provided by Hillrom to the Board's financial advisors Goldman Sachs & Co. LLC ("Goldman Sachs") and BofA Securities, Inc. ("BofA"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Goldman Sachs and BofA, if any, and provide to the Company and the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7.     Plaintiff is a citizen of Arizona and, at all times relevant hereto, has been a Hillrom stockholder.

8.     Defendant Hillrom is a global medical technology leader who enhances outcomes for patients and their caregivers by Advancing Connected Care™ around the world, with innovations touching over 7 million patients each day. Hillrom is incorporated in Indiana and has its principal place of business at 130 E. Randolph St. Suite 1000, Chicago, IL 60601. Shares of Hillrom common stock are traded on the NYSE under the symbol "HRC".

9.     Defendant John P. Groetelaars ("Groetelaars") has been a Director of the Company at all relevant times. In addition, Groetelaars serves as the Company's Chief Executive Officer ("CEO") and President.

10.     Defendant William G. Dempsey ("Dempsey") has been a director of the Company at all relevant times. In addition, Dempsey serves as the Company's Chairman of the Board.

11.     Defendant Gary L. Ellis ("Ellis") has been a director of the Company at all relevant times.

12.     Defendant Mary Garrett ("Garrett") has been a director of the Company at all relevant times.

13.    Defendant Felicia F. Norwood ("Norwood") has been a director of the Company at all relevant times.

14.    Defendant James R. Giertz ("Giertz") has been a director of the Company at all relevant times.

15.    Defendant William H. Kucheman ("Kucheman") has been a director of the Company at all relevant times.

16.    Defendant Ronald A. Malone ("Malone") has been a director of the Company at all relevant times.

17.    Defendant Gregory J. Moore ("Moore") has been a director of the Company at all relevant times.

18.    Defendant Nancy M. Schlichting ("Schlichting") has been a director of the Company at all relevant times.

19.    Defendant Stacy Enxing Seng ("Seng") has been a director of the Company at all relevant times.

20.    Defendants identified in ¶¶ 9 - 19 are collectively referred to as the "Individual Defendants."

21.    Non-Party Baxter is an American multinational health care company with headquarters in Deerfield, Illinois. Shares of Baxter common stock are traded on the NYSE under the symbol "BAX."

22.    Non-Party Merger Sub is a wholly owned subsidiary of Baxter created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

26.    Hillrom operates as a medical technology company worldwide. It operates through Patient Support Systems, Front Line Care, and Surgical Solutions segments. The Company offers medical surgical beds, intensive care unit beds, and bariatric patient beds, patient mobility solutions, non-invasive therapeutic products and surfaces, and information technologies and software solutions, as well as sells equipment service contracts for its capital equipment. It also provides patient monitoring and diagnostics products, such as patient exam and diagnostics, patient monitoring, diagnostic cardiology, vision screening, and diagnostics products; and respiratory health products comprising non-invasive devices that provide respiratory support and assist patients in the mobilization of retained blockages. In addition, the Company offers surgical solutions that include tables, lights, and pendants; and positioning devices for use in shoulder, hip, spinal, and lithotomy surgeries, as well as platform-neutral positioning accessories for operating room tables. It sells and rents products to acute and extended care facilities through direct sales force and distributors; sells and rents products directly to patients in the home; and sells products to primary care facilities through distributors. Hillrom was founded in 1915 and is headquartered in Chicago, Illinois.

27. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success. For example, in the July 30, 2021 press release announcing its 2021 Q3 financial results, the Company reported worldwide revenue of $718 million and earnings of $1.38 per diluted share which exceeded the company's previously issued guidance range of $1.32 to $1.36 per diluted share.

28. Speaking on the results, CEO Defendant Groetelaars said, "'Our dedicated, global team continues to support customers' evolving needs and we remain encouraged by the building momentum and recovery in our underlying business. This resulted in third quarter financial performance that exceeded expectations, illustrating the benefits of Hillrom's accelerated transformation, the resiliency of our portfolio, and our ongoing commitment to Advancing Connected Care™. As we look forward, we remain committed to driving sustainable and profitable growth, achieving our strategic objectives, and unlocking significant value for patients, caregivers and shareholders as we deliver on our mission.'"

29. The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Hillrom. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

30. Despite this upward trajectory, the Individual Defendants have caused Hillrom to enter into the Proposed Transaction without providing requisite information to Hillrom stockholders such as Plaintiff.

***The Flawed Sales Process***

31. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

32.     Notably, the Preliminary Proxy Statement fails to indicate if a special committee of disinterested Board members was created to run the sales process, and if not, the specific reasoning for such a decision.

33.     Additionally, the Preliminary Proxy Statement fails to provide adequate information as to why no market check for any potentially interested third party was conducted by the Board or by anyone on its behalf during the sales process.

34.     Moreover, the Preliminary Proxy Statement fails to provide adequate information as to why the Board deemed it necessary to engage two financial advisors. Notably, the Preliminary Proxy Statement reveals that in connection with the Proposed Transaction Goldman Sachs is set to receive $86 million in compensation while BofA is set to receive $11 million. The engagement of a seemingly unnecessary second financial advisor at such a high cost must be adequately explained

35.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Baxter, whether this agreement differed from any other agreement with potentially interested third parties, including those not specifically mentioned by the Preliminary Proxy Statement, and if so in what way, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

36.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

37.     On September 2, 2021, Hillrom and Baxter issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **DEERFIELD, ILL., and CHICAGO, Sept. 2, 2021** – Baxter International Inc. (NYSE:BAX), a leading global medical products company, and Hillrom (NYSE:HRC), a global medical technology leader, today announced that the companies have entered into a definitive agreement under which Baxter has agreed to acquire Hillrom for $156.00 per share in cash for a total equity value of

approximately $10.5 billion and a total enterprise value of approximately $12.4 billion, including the assumption of debt.

Hillrom brings a highly complementary product portfolio and innovation pipeline that will enable Baxter to provide a broader array of medical products and services to patients and clinicians across the care continuum and around the world, facilitating the delivery of healthcare that is patient- and customer-centered and focused on improving clinical outcomes. The combination is also expected to accelerate the companies' expansion into digital and connected care solutions that are increasingly enabling patients with access to hospital-level care at home or in other care settings.

"Baxter and Hillrom share a common vision for transforming healthcare to better serve all patients and providers," said José (Joe) E. Almeida, Baxter's chairman, president and chief executive officer. "Patients increasingly want to receive their care at home or nearby, while hospitals and other care providers are increasingly using digital health technologies to expand access, improve quality and lower costs. Baxter and Hillrom are uniting to meet the challenges of a rapidly evolving global healthcare landscape, while also creating significant value for all the stakeholders we serve. We're very excited to welcome the Hillrom team to Baxter, and to join together to advance our mission to save and sustain lives."

John Groetelaars, Hillrom's president and chief executive officer, said, "We are proud of the steps we have taken to transform Hillrom into a medical technology leader with an innovative portfolio of connected care solutions. Today's milestone announcement represents a win-win for all stakeholders. Patients and caregivers will benefit from enhanced capabilities across the continuum of care, our shareholders will receive a significant and immediate premium for their investment, and our employees will benefit from being part of a larger, stronger company with accelerated growth opportunities. Baxter is the ideal partner to enhance our global reach and realize the true potential of our vision to accelerate medical innovation around the world. With our shared patient-centric cultures, we look forward to seamlessly bringing our two companies together."

Strategic Rationale

The Baxter-Hillrom combination will expand access to Hillrom's portfolio globally; broaden the presence of the combined companies across sites of care; accelerate and strengthen the combined organization's digital transformation; and is expected to generate compelling financial returns for Baxter's shareholders.

Key benefits of the acquisition include:

-   A common vision for transforming healthcare to improve efficiencies and clinical outcomes, drive actionable insights and lead across the care continuum: The complementary product offering of the combined companies will support

the patient in the hospital, at home, and in alternate sites of care, allowing better integration and coordination of healthcare delivery.

- A strengthened portfolio with opportunity to accelerate digitally-enabled connected healthcare and expand penetration of combined solutions worldwide: The companies' combined capabilities in therapeutic delivery, monitoring, blood purification, diagnostics and communications for patients and caregivers will enhance opportunities for truly connected care that result in better patient outcomes, improved workflow efficiencies and data-driven insights while lowering healthcare costs overall.

- A robust combined platform for shareholder value creation through meaningful anticipated synergies with a continued commitment to strong cash flow generation: The transaction provides a significant opportunity to build upon Baxter's established global infrastructure to grow Hillrom's international business, which currently represents approximately one-third of Hillrom's total 2020 revenue. It should also meaningfully enhance Baxter's earnings growth through the realization of substantial cost synergies and potential opportunities to accelerate revenue growth over the longer term.

- A shared culture that values inclusivity, innovation and corporate responsibility: The combination unites two organizations that have each been recognized for achievements in workplace diversity and corporate responsibility, and for fostering an environment that supports and encourages high performance, respect for individuals, and professional growth.

Transaction Highlights

Upon completion of the transaction, Baxter will pay $156.00 in cash for each outstanding share of Hillrom common stock for a purchase price of $10.5 billion. Baxter will also assume Hillrom's outstanding debt and cash, for a total enterprise value of $12.4 billion. The purchase price represents a 26% premium to Hillrom's closing stock price on July 27, 2021, the last trading day prior to media reports speculating about a potential transaction.

Baxter expects the combination to result in approximately $250 million of annual pre-tax cost synergies by the end of year three. This estimate excludes any benefit from potential new revenue growth opportunities resulting from the combination of the two organizations.

The transaction is expected to be low double-digit accretive to Baxter's adjusted earnings per share (EPS) in the first full year post close, increasing to more than 20% by year three. The transaction is also expected to expand Baxter's overall adjusted EBITDA margins over the medium-term and deliver strong cash flow generation with a high single-digit return on invested capital (ROIC) expected by year five.

Baxter will finance the transaction through a combination of cash and fully committed debt financing. At closing, Baxter estimates that it will have net leverage of approximately 4.2x net debt to pro formal adjusted EBITDA of the combined companies (as estimated by Baxter management). Baxter is committed to an investment grade credit rating and deleveraging to 2.75x net leverage within two years of closing.

Approvals and Timing

The Boards of Directors of both companies have unanimously approved the acquisition. The transaction is subject to the approval of Hillrom shareholders and the satisfaction of customary closing conditions, including regulatory approvals. The transaction is expected to close by early 2022.

Baxter Long-term Financial Guidance and 2021 Investor Conference Update

As a result of the proposed acquisition, Baxter's 2021 Investor Conference, originally scheduled for Sept. 20, will be rescheduled to a date following the transaction's completion. This will allow Baxter to provide an updated strategic and financial outlook inclusive of the combined organizations.

In the interim, Baxter is issuing long-term financial guidance as a standalone entity. Baxter expects sales to grow 4-5%, compounded annually from 2021 to 2024 based on current foreign exchange rates. Over this period, Baxter anticipates expanding its adjusted operating margin by 300 basis points or more. On an adjusted basis, Baxter expects to deliver earnings growth of low double digits compounded annually over the same period. This Baxter standalone guidance does not reflect any impact from the proposed acquisition.

***Potential Conflicts of Interest***

38.     The breakdown of the benefits of the deal indicate that Hillrom insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Hillrom.

39.     Notably, Company insiders, currently own large, illiquid portions of Company stock, as well as other equity awards such as stock options, restricted stock units, and performance stock units, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Preliminary Proxy Statement provides the

following information, it fails to disclose an accounting of how much merger consideration will be afforded to Company insiders as a consequence of the consummation of the Proposed Transaction and the cashing out of these amounts:

| Name of Beneficial Owner | Shares Owned Directly | Shares Owned Indirectly | Shares Under Options/RSUs Exercisable/ Vesting Within 60 Days | Total Number of Shares Beneficially Owned | Percent of Class[1] |
|---|---|---|---|---|---|
| *Directors and NEOs:* | | | | | |
| William G. Dempsey | 5,376 | — | 23,148 | 28,524 | * |
| John P. Groetelaars | 25,075 | — | 191,089 | 216,164 | * |
| Gary L. Ellis | — | — | 8,624 | 8,624 | * |
| Stacy Enxing Seng | — | — | 17,248 | 17,248 | * |
| Mary Garrett | 300 | — | 10,359 | 10,659 | * |
| James R. Giertz | 2,000 | — | 37,359 | 39,359 | * |
| William Kucheman | — | — | 26,063 | 26,063 | * |
| Gregory J. Moore | — | — | 5,179 | 5,179 | * |
| Felicia F. Norwood | — | — | 3,661 | 3,661 | * |
| Nancy M. Schlichting | — | — | 10,359 | 10,359 | * |
| Barbara W. Bodem | 5,868 | 660 | 31,751 | 38,279 | * |
| Andreas Frank | 16,770 | — | 62,177 | 78,947 | * |
| Paul S. Johnson | 6,221 | — | 34,030 | 40,251 | * |
| Deborah Rasin | 19,944 | — | 34,441 | 54,385 | * |
| l directors and executive officers as a group (total of 17 individuals) | 87,709 | 1,210 | 514,487 | 603,406 | * |

| Name of Beneficial Owner | Total Number of Shares Beneficially Owned | Percent of Class[1] |
|---|---|---|
| *Other 5% Beneficial Owners:* | | |
| BlackRock, Inc. 55 East 52nd Street New York, NY 10055 | 6,702,313 [2] | 10.2% |
| Wellington Management Group LLP Wellington Group Holdings LLP Wellington Investment Advisors Holdings LLP Wellington Management Company LLP c/o Wellington Management Company LLP 280 Congress Street Boston, MA 02210 | 7,298,975 [3] | 11.1% |

| The Vanguard Group | 6,681,997 [4] | 10.1% |
| 100 Vanguard Blvd. | | |
| Malvern, PA 19355 | | |

40.    In addition, employment agreements with certain Hillrom executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Named Executive Officer[1] | Cash ($)[1] | Equity($)[2] | Perquisites / Benefits($)[3] | Tax Reimbursement ($)[4] | Total ($) |
| --- | --- | --- | --- | --- | --- |
| John P. Groetelaars | 7,767,898 | 32,253,508 | 55,155 | 12,641,335 | 52,717,896 |
| Barbara Bodem | 2,334,110 | 9,448,047 | 36,309 | 3,753,537 | 15,572,003 |
| Paul S. Johnson | 2,149,479 | 7,652,682 | 23,648 | 3,414,498 | 13,240,307 |
| Andreas G. Frank | 1,952,956 | 6,321,917 | 36,141 | — | 8,311,014 |
| Deborah M. Rasin | 1,992,411 | 5,556,048 | 36,252 | — | 7,584,711 |

41.    The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.    Thus, while the Proposed Transaction is not in the best interests of Hillrom, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

43.     On October 1, 2021, the Hillrom Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.  Specific reasoning as to why no special committee of the disinterested independent directors was created to run the sales process;

    b.  The specific reasoning as to why multiple financial advisors were engaged by the Board during the sales process rather than engaging a single financial advisor;

    c.  Whether the confidentiality agreements entered into by the Company with Baxter differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties if any, and if so, in what way;

    d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Baxter, would fall away; and

    e.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the

negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Hillrom's Financial Projections*

45.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for Hillrom provided by Hillrom management and relied upon by Goldman Sachs and BofA in their analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading

46.    The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Hillrom management provided to the Board, Goldman Sachs, and BofA.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

47.    With regard to the Hillrom Projections prepared by Hillrom management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a.    Adj. EBITDA, including all underlying necessary inputs and assumptions, including specifically: earnings before interest, taxes, depreciation and amortization, as adjusted to exclude acquisition and integration costs and related fair value adjustments, field corrective actions, regulatory compliance costs and special charges;

    b.    Adj. Operating Income, including all underlying necessary inputs and assumptions, including specifically: Operating Income, calculated in

accordance with GAAP, as adjusted to exclude acquisition and integration costs and related fair value adjustments, acquisition-related intangible asset amortization, field corrective actions, regulatory compliance costs and special charges; and

c. Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: depreciation and amortization (excluding acquisition-related asset amortization) less capital expenditures and changes in net working capital plus the tax shield attributable to acquisition related asset amortization.

48.    The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49.    This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.    Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs' and/or BofA's financial analyses or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

51.    In the Preliminary Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

52.    With respect to the *Implied Premia and Multiples Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The amount of fully diluted outstanding shares of Hillrom common stock as of August 26, 2021; and

    b.   Hillrom's net debt as of June 30, 2021.

53.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized discount rate range of 7.5% to 8.5%;

    b.   Hillrom's weighted average cost of capital;

    c.   The specific inputs and assumptions used to determine the utilized perpetual growth rate range of 1.0% to 2.0%;

    d.   The specific inputs and assumptions used to determine the implied exit terminal year next-twelve (12)-month ("NTM") EBITDA multiples ranging from 9.6x to 13.1x;

    e.   The Company's target capital structure weightings;

    f.   The Company's cost of long-term debt,

    g.   The Company's after-tax yield on permanent excess cash, if any,

    h.   The Company's future applicable marginal cash tax rate and

    i.   The beta for the Company utilized;

    j.   The specific "certain financial metrics for the United States financial markets generally" utilized; and

    k.   The amount of fully diluted outstanding shares of Hillrom common stock as of August 26, 2021.

54.     With respect to the *Illustrative Present Value of Future Share Price Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.  The specific inputs and assumptions used to determine the enterprise value to NTM Adjusted EBITDA multiples of 13.0x to 15.0x Adjusted EBITDA per share of Hillrom common stock as of the end of each fiscal year from 2021 to 2023;

      b.  Hillrom's historical NTM trading multiples over time utilized;

      c.  The specific inputs and assumptions used to determine the utilized illustrative discount rate 7.9%;

      d.  Hillrom's cost of equity, including the present value of projected dividends paid; and

      e.  The specific "certain company-specific inputs, including a beta for the company, as well as certain financial metrics for the United States financial markets generally" utilized.

55.     With respect to the *Premia Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.  The metrics for all specific transactions analyzed.

56.     With respect to the *Selected Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.  The specific inputs and assumptions used to determine the utilized reference range of enterprise value to LTM Adjusted EBITDA multiples of 14.1x to 21.2x to Hillrom's LTM Adjusted EBITDA as of June 30, 2021.

57.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

58.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and

related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Hillrom stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by BofA*

59.     In the Preliminary Proxy Statement, BofA describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

60.     With respect to the *Selected Publicly Traded Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The specific metrics for each compared company;

      b.   Hillrom's number of fully-diluted shares outstanding; and

      c.   Hillrom's net debt;

      d.   The specific inputs and assumptions used to determine the utilized 2021E EV / EBITDA multiple reference range of 14.5x to 18.5x as applied to Hillrom management's estimates of calendar year 2021 Adjusted EBITDA; and

      e.   The specific inputs and assumptions used to determine the utilized 2022E EV / EBITDA multiple reference range of 13.0x to 17.0x as applied to Hillrom management's estimates of calendar year 2022 Adjusted EBITDA.

61.     With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The specific metrics for each selected transaction;

      b.   The specific date on which each selected transaction closed;

      c.   The value of each selected transaction;

d.  The specific inputs and assumptions used to determine the utilized enterprise value to LTM EBITDA multiple reference range of 14.0x to 18.0x as applied to Hillrom's Adjusted EBITDA for the twelve-month period ended June 30, 2021; and

e.  The specific inputs and assumptions used to determine the utilized enterprise value to NTM EBITDA multiple reference range of 11.5x to 16.5x as applied to Hillrom management's estimates of Adjusted EBITDA for the twelve-month period ending June 30, 2022.

62.  With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a.  The specific terminal values for Hillrom calculated;

b.  The specific inputs and assumptions used to determine the utilized EBITDA exit multiples of 10.0x to 15.0x;

c.  The specific inputs and assumptions used to determine the utilized discount rate range of 7.0% to 9.0%;

d.  Hillrom's weighted average cost of capital;

e.  Hillrom's net debt as of June 30, 2021; and

f.  The number of fully-diluted shares of Hillrom common stock outstanding.

63.  With respect to the *Wall Street Analysts Unaffected Price Targets* Analysis, the Preliminary Proxy Statement fails to disclose the following:

a.  The specific price targets utilized;

b.  The identity of the analysts and/or analyst firms that created the utilized price targets; and

c.  The specific inputs and assumptions used to determine the Hillrom's utilized illustrative cost of equity of 9%.

64.  With respect to the *Wall Street Analysts Current Price Targets* Analysis, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific price targets utilized;

    b.   The identity of the analysts and/or analyst firms that created the utilized price targets; and

    c.   The specific inputs and assumptions used to determine the Hillrom's utilized illustrative cost of equity of 9%.

65.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

66.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Hillrom stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

67.    Plaintiff repeats all previous allegations as if set forth in full herein.

68.    Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

69.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or

consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

70.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

71.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

72.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

73.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

74.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

75.    Plaintiff repeats all previous allegations as if set forth in full herein.

76.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

77.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

78.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Hillrom's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading.

As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

79.    The Individual Defendants acted as controlling persons of Hillrom within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Hillrom to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Hillrom and all of its employees.  As alleged above, Hillrom is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.    Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 12, 2021

**BRODSKY SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*